UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,     Plaintiff,

v.     Criminal Action No. 3:17-cr-32-DJH

ERIC BENNETT, et al.,     Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Defendant Eric Bennett has filed a motion to suppress evidence obtained through a wiretap in this case, arguing that the wiretap was unnecessary. (Docket No. 58) In the alternative, Bennett requests a *Franks* hearing to determine whether material information was omitted from the wiretap application. (*Id.*) The United States maintains that the wiretap satisfies the statutory requirement for necessity and that Bennett has not proven the existence of material omissions to warrant a *Franks* hearing. (D.N. 69) For the reasons discussed below, the motion to suppress will be denied.

**I. BACKGROUND**

Eric Bennett was initially charged on February 22, 2017, with attempted murder of a federal employee, forcible assault of a federal employee, and discharge of a firearm during a crime of violence. (D.N. 1) These charges were brought following an investigation into the shooting of Daron Lester, a United States Postal Service (USPS) employee. (*See* D.N. 69-5, PageID # 352, 355; D.N. 69-6, PageID # 356, 359; D.N. 69-7, PageID # 360, 363) On April 19, 2017, the grand jury returned a superseding indictment naming two additional defendants: Marcus Bennett and Juliyah Young. (D.N. 24) The seven-count superseding indictment alleges that Eric Bennett, Marcus Bennett, and Juliyah Young conspired to distribute heroin and

1

marijuana; Eric Bennett and Marcus Bennett conspired and attempted to murder a federal employee and forcibly assaulted a federal employee; and Eric Bennett alone discharged a firearm during a crime of violence, possessed a firearm as a convicted felon, and used and possessed a firearm in furtherance of a drug-trafficking crime. (*Id.*)

The government obtained at least some of the evidence against Eric Bennett via wiretaps approved by this Court. Two wiretap applications were submitted in this case. Only one is relevant here, however. The Court approved a wiretap of Marcus Bennett's phone on February 3, 2017. (D.N. 58-2, PageID # 182, 236) Aaron Mehall, a United States Postal Inspector, submitted an affidavit in support of the wiretap application. (*Id.*, PageID # 181)

Eric Bennett filed a motion to suppress on September 11, 2017, arguing that (1) the February 3, 2017, wiretap application might not have been approved by the Department of Justice; (2) the wiretap was not necessary because traditional investigative techniques were sufficient; and (3) Inspector Mehall omitted material information from his affidavit. (D.N. 58) The United States responds that (1) the proper Department of Justice officials authorized the wiretap application; (2) Mehall's affidavit was sufficient to support a finding that normal investigative procedures had been tried and failed or reasonably appeared to be unlikely to succeed if tried; and (3) Bennett provided no basis to conclude that Mehall intentionally or recklessly omitted material facts. (D.N. 69)

## II. DISCUSSION

### A. Department of Justice Approval

Bennett first questions whether the Department of Justice approved the wiretap application, as required by 18 U.S.C. § 2516. (*See* D.N. 58, PageID # 163-64) Section 2516 provides:

> The Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General or acting Deputy Assistant Attorney General in the Criminal Division or National Security Division specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for . . . an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made . . . .

18 U.S.C. § 2516(1). The consequence of failing to comply with this requirement is suppression: "We are confident that the provision for pre-application approval was intended to play a central role in the statutory scheme and that suppression must follow when it is shown that this statutory requirement has been ignored." *United States v. Giordano*, 416 U.S. 505, 528 (1974).

Bennett asserts that the government failed to attach a memorandum of authorization to the copy of the wiretap materials he received in discovery. (D.N. 58, PageID # 163) The absence of this memorandum from discovery, he posits, raises a question as to whether the government provided such a memorandum to the Court. (*Id.*, PageID # 164) The United States responds that it obtained proper authorization for the wiretap application and that the authorization memorandum was attached to the application and presented to the Court. (D.N. 69, PageID # 270) In support, the United States attached the entire application to its response to the motion to suppress. (*Id.*, PageID # 270-71; D.N. 69-3) The attachment clearly shows that a memorandum of authorization, signed by an Acting Deputy Assistant Attorney General of the Criminal Division,[1] was included with the wiretap application. (D.N. 69-3, PageID # 340-41) Therefore, the Court finds that the United States complied with the preapproval requirement of 18 U.S.C. § 2516(1), and suppression is not warranted on this ground.

---

[1] An Acting Deputy Assistant Attorney General of the Criminal Division had been specifically designated to authorize wiretap applications by the Attorney General at the time of the wiretap at issue in this case. (*See* D.N. 69-3, PageID # 339)

B.  Necessity

1.  Standard

Bennett also contends that the wiretap application does not meet the necessity requirement of 18 U.S.C. § 2518.  (*See* D.N. 58, PageID # 165-67)  Section 2518 provides:

> Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication . . . shall include . . . a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

18 U.S.C. § 2518(1)(c).  This is known as the "necessity requirement." *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002).  There must be "strict compliance" with the statute.  *United States v. Alfano*, 838 F.2d 158, 161 (6th Cir. 1988).  "[W]here a warrant application does not meet the necessity requirement, the fruits of any evidence obtained through that warrant must be suppressed." *United States v. Rice*, 478 F.3d 704, 710 (6th Cir. 2007).

The necessity requirement was designed "to ensure that a wiretap 'is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" *Alfano*, 838 F.2d at 163 (citing *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974)).  However, "the purpose 'is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques.'" *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir. 1977) (citing *United States v. Pacheco*, 489 F.2d 554, 565 (5th Cir. 1974)).  In other words, "the government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted." *Alfano*, 838 F.2d at 163 (citing *United States v. Brown*, 761 F.2d 1272, 1275 (9th Cir. 1985)).  "All that is required is that the investigators gave serious consideration to the non-wiretap techniques prior to

applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." *Id.* at 163-64 (quoting *United States v. Lambert*, 771 F.2d 83, 91 (6th Cir. 1985)). The statute does "not require proof of the absolute impossibility of all other means." *Id.* at 164. "[A] reasonable statement of the consideration or use of other investigative means is adequate." *Id.*

However, "a purely conclusory affidavit unrelated to the instant case and not showing any factual relations to the circumstances at hand" would be inadequate. *Landmesser*, 553 F.2d at 20. "What is required . . . is information about particular facts of the case at hand which would indicate that wiretaps are not being 'routinely employed as the initial step in criminal investigation.'" *Id.* (citing *Giordano*, 416 U.S. at 515). The Sixth Circuit has noted that "the mere fact that the affidavit . . . rest[s] in part on statements that would be equally applicable to almost any [drug-trafficking] case does not render the affidavit insufficient." *Id.* (quoting *United States v. Matya*, 541 F.2d 741, 745 (8th Cir. 1976)). Moreover, "the mere fact that some investigative techniques were successful in uncovering evidence of wrongdoing does not mandate that a court negate the need for wiretap surveillance." *Stewart*, 306 F.3d at 305.

The Sixth Circuit has observed that "wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation." *Id.* (quoting *Landmesser*, 553 F.2d at 20). This Court has recognized that wiretapping is appropriate "where drug transportation and sales appear to have been frequently coordinated via cellphone." *United States v. Mattingly*, No. 3:15-cr-99-DJH, 2016 WL 3670828, at *8 (W.D. Ky. July 1, 2016).

5

## 2. Application

Bennett argues that the government's yearlong investigation provided it with enough information to prosecute the defendants; thus, further investigation (including the wiretap) was not necessary. (D.N. 58, PageID # 166) Specifically, he argues that GPS pinging of telephones, package tracking through USPS, multiple sources, and multiple controlled buys were sufficient, making the wiretap "unduly invasive." *Id.*

The United States responds that, although those investigative techniques "resulted in some success, they were inadequate to provide evidence as to the full nature and scope of the criminal activity and the identities of all those involved." (D.N. 69, PageID # 274) In addition, the government argues that Mehall's affidavit detailed the investigative techniques not used and the reasons why they were not used or would not be successful. (*Id.*) According to the government, the affidavit "makes clear that these techniques would not only fail to uncover the fullness of the criminal activity and its participants, but would also prematurely alert the named targets to the investigation thus preventing the gathering of further information." (*Id.*, PageID # 274-75)

In the affidavit, Mehall states that the investigators attempted physical surveillance of Marcus Bennett at his residence, but he had a home-security camera on his front porch facing the street and ADT home-security signs posted in front of the residence. (D.N. 69-2, PageID # 311) Toll analysis revealed that Marcus Bennett made three phone calls to an ADT helpline, which was consistent with Mehall's experience that drug traffickers commonly used home-surveillance systems to monitor their residences in order to conceal their activities from law enforcement. (*Id.*) Similarly, Mehall stated that physical surveillance of Eric Bennett was attempted at his residence, but he also had a home-security camera on the front of his house facing the street that

6

was motion activated. (*Id.*) This was also consistent with Mehall's experience that drug traffickers used home-surveillance systems to conceal their activities from law enforcement. (*Id.*)

In addition, a GPS-ping order on Marcus Bennett's telephone showed that he flew to Los Angeles and drove back to Louisville. (*Id.*, PageID # 311-12) Based on his training and experience, Mehall believed that Marcus Bennett spent several days in Los Angeles retrieving narcotics, which he drove back to Louisville. (*Id.*) Although investigators received the approximate location of both Marcus and Eric Bennett in fifteen-minute increments, the Bennetts could come and go from locations within that time frame without agents receiving a ping. (*Id.*, PageID # 312)

While toll records identified phone numbers used by associates of Marcus Bennett, they did not provide information as to the substance of the conversations or the identities of the conversants. (*Id.*, PageID # 312-13) Toll records were also of limited use because Marcus Bennett used multiple phones. Also, individuals in contact with him used prepaid phones with no subscriber information. (*Id.*, PageID # 313) Thus, agents had not been able to identify associates of Marcus Bennett. (*Id.*)

Mehall also explained that a confidential informant introduced into the Bennett drug-trafficking organization was able to make controlled heroin purchases from Marcus Bennett via Eric Bennett. (*Id.*, PageID # 314) However, the informant could not contact other members of the organization because Marcus Bennett kept his drug customers isolated from each other. (*Id.*, PageID # 314-15) Moreover, the usefulness of any undercover agent was limited due to compartmentalization, which minimized contact among various members of the drug-trafficking organization. (*Id.*, PageID # 315) Additional informants or undercover officers were not used

because drug traffickers, in Mehall's experience, were suspicious of anyone with whom they had not dealt before. (*Id.*)

Mehall's affidavit addressed the insufficiency of search warrants as a feasible alternative to a wiretap. Investigators simply did not know where the drug-trafficking organization stored controlled substances or drug proceeds. (*Id.*, PageID # 316) And, even if they did know where the defendants kept the drugs, the execution of search warrants would alert the subjects of the investigation and thwart any opportunity to learn about more co-conspirators. (*Id.*, PageID # 317) Vehicle-tracking devices were not a feasible alternative either, because Marcus and Eric Bennett drove different vehicles throughout the investigation. (*Id.*, PageID # 318-19)

From trash searches investigators recovered a cell phone with three saved contacts, one of which was a known heroin dealer. (*Id.*, PageID # 319) But the searches failed to reveal where the defendants stored drugs, the identities of additional members of the drug-trafficking organization, or the source of supply for the drugs purchased by Marcus Bennett. (*Id.*) Finally, Mehall's affidavit detailed reasons why additional grand jury subpoenas, mail covers, and interviews of target subjects and their associates had not been used. (*See id.*, PageID # 319-22)

The information in the affidavit shows that investigators gave "serious consideration to the non-wiretap techniques prior to applying for wiretap authority," detailed the extent to which the government utilized the alternative methods, and "informed [the Court] of the reasons for [their] belief that such non-wiretap techniques [had] been or [would] likely be inadequate." *See Alfano*, 838 F.2d at 163-64. And that is all that the law requires. *See id.* Moreover, the fact that some non-wiretap techniques "were successful in uncovering evidence of wrongdoing" does not eliminate the need for a wiretap. *Stewart*, 306 F.3d at 305. The Sixth Circuit has recognized that even if a wiretap is not necessary to gather more evidence against an individual defendant, it may

still be necessary to establish the scope of a conspiracy. *See United States v. Jenkins*, 659 F. App'x 327, 335 (6th Cir. 2016). Thus, Bennett's argument that further investigation in the form of a wiretap was not necessary is without merit.

    **C.**     *Franks* **Hearing**

        **1.**     **Standard**

In the alternative, Bennett requests an evidentiary hearing to determine whether Mehall intentionally, or with reckless disregard for the truth, omitted material information from his affidavit in support of the wiretap application. (*See* D.N. 58, PageID # 163-65) To obtain a *Franks* hearing, Bennett must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and [] the allegedly false statement is necessary to the finding of probable cause." *United States v. Poulsen*, 655 F.3d 492, 504 (6th Cir. 2011) (alteration in original) (quoting *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008)).

> A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden. His allegations must be more than conclusory. He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth.

*United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). In addition, the defendant "must accompany his allegations with an offer of proof." *Id.* "If he meets these requirements, then the question becomes whether, absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause." *Id.*

"[T]he *Franks* doctrine applies to omissions of information from affidavits as well." *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998) (citing *United States v. Bonds*, 12 F.3d 540, 568-69 (6th Cir. 1993)); *see United States v. Young*, 847 F.3d 328, 348-49 (6th Cir. 2017). Moreover, the Sixth Circuit has applied the *Franks* doctrine where defendants moved to suppress

9

wiretap information on grounds that necessity had not been shown and requested an evidentiary hearing to determine the veracity of the agent who submitted the affidavit in support of the wiretap application. *See United States v. Giacalone*, 853 F.2d 470, 473-76 (6th Cir. 1988); *see also Stewart*, 306 F.3d at 304-06. However, in the context of necessity for a wiretap, the *Franks* analysis changes slightly to require the defendant to show that the necessity requirement would not have been met absent the challenged statements or omissions. *See United States v. Kelley*, 596 F. Supp. 2d 1132, 1151 (E.D. Tenn. 2009).

The Sixth Circuit has "repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008). "Allegations of material omission are held to a higher standard because of the 'potential for endless rounds of *Franks* hearings' due to potentially 'endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to [the] defendant's benefit.'" *Id.* at 415-16 (quoting *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990)). "[E]xcept in the *very* rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause [or necessity], *Franks* is inapplicable to the omission of disputed facts." *Mays*, 134 F.3d at 816.

### 2. Application

Bennett argues that "important details of [a] prior investigation were omitted from the [wiretap] application." (D.N. 58, PageID # 164) First, Bennett alleges that Mehall did not disclose in his affidavit that search warrants had been executed at the homes of Eric and Marcus Bennett and that phones, computers, and documents had been seized from their homes. (*Id.*)

10

Second, Bennett alleges that Mehall misrepresented the need for a wiretap by asserting in the affidavit that the execution of search warrants would alert targets to the existence of an investigation, because Defendants were already "well aware" of the investigation based on search warrants that had been executed earlier. (*Id.*, PageID # 164-65) Third, Bennett alleges that Mehall failed to disclose that the government was in possession of "a 2,445 page forensic extraction report from a cell phone seized from Eric Bennett."[2] (*Id.*, PageID # 165)

The United States responds that Bennett provides "no basis to conclude that Inspector Mehall intentionally or recklessly omitted material facts" and makes "no allegation that such an omission undermined the showing of probable cause." (D.N. 69, PageID # 277-78) Further, the government asserts that the search warrants at issue were executed in an attempt to find evidence related to the shooting of a USPS letter carrier; they were not connected to the broader drug-trafficking investigation that began after the shooting investigation failed to result in an indictment. (*Id.*, PageID # 273) Finally, the United States argues that Defendants could not have been aware of the investigation, because they continued their drug-trafficking activities while it was ongoing. (*Id.*, PageID 274)

Bennett's argument fails at the outset because he offers no proof that Mehall omitted material information from his affidavit. Indeed, he asserts two omissions—execution of search warrants at the homes of Eric and Marcus Bennett and a forensic extraction report—without suggesting any alternative proof. (*See* D.N. 58, PageID # 164-65) *See Bennett*, 905 F.2d at 934 (explaining that a defendant requesting a *Franks* hearing must support his allegations with "an

---

[2] In his reply brief, Bennett appears to allege for the first time that the government also omitted information relating to pending drug charges against him in state court. (*See* D.N. 70, PageID # 367) Issues raised for the first time in a reply brief, however, are not properly before the Court. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *Sims v. Piper*, No. 07-14380, 2008 WL 3318746, at *5 (E.D. Mich. Aug. 8, 2008).

offer of proof"). Even if Bennett had presented proof of the alleged omissions, his request for a *Franks* hearing would still be insufficient, because he has not demonstrated that Mehall omitted the information because of an intent to misrepresent the facts or mislead the Court. *See Mays*, 134 F.3d at 816; *United States v. Darrah*, No. 11-20129, 2014 WL 5311534, at *3 (E.D. Mich. Oct. 17, 2014). Finally, the Court rejects the argument that Mehall was disingenuous when he asserted that the execution of search warrants would alert targets to the existence of an investigation. The United States cites evidence in the record showing that the earlier search warrants were executed as part of the investigation into the shooting only. (*See* D.N. 69, PageID # 273; D.N. 69-5, PageID # 355; D.N. 69-6, PageID # 359; D.N. 69-7, PageID # 363) Investigators were not looking for evidence of illegal drugs when they executed these search warrants at locations associated with Eric and Marcus Bennett. (*See* D.N. 69-5, PageID # 355; D.N. 69-6, PageID # 359; D.N. 69-7, PageID # 363) Thus, it is not clear from the record that Eric and Marcus Bennett were "well aware" (D.N. 58, PageID # 164) of the drug-related phase of the investigation at the time the government applied for the wiretap. Bennett's argument that Mehall misrepresented the need for secrecy does not rise to the level of "a strong preliminary showing" of "an intention to mislead." *See Mays*, 134 F.3d at 816. For all of these reasons, the Court concludes that Bennett is not entitled to a *Franks* hearing.

III. CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Bennett's motion to suppress (D.N. 58) is **DENIED**. Bennett's request for a *Franks* hearing is also **DENIED**.

November 9, 2017

David J. Hale, Judge
United States District Court